## AMERICAN SIGNAL CORPORATION v. INTERNATIONAL ROLL-CALL SYSTEMS, Inc., et al.

### No. 4590.

Circuit Court of Appeals, Fourth Circuit.

April 10, 1940.

Casanave Young, of Washington, D. C., and Eppa Hunton, IV, of Richmond, Va. (Hunton, Williams, Anderson, Gay & Moore, of Richmond, Va., and Young & Young, of Washington, D. C., on the brief), for appellant and cross-appellee.

John B. Brady, of Washington, D. C. (Stuart A. Eacho, of Richmond, Va., on the brief), for appellees and cross-appellants.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

American Signal Corporation (hereinafter called the plaintiff) brought a civil action against International Roll-Call Systems, Incorporated, and Charles F. Thompson (hereinafter called the defendants) based upon the alleged infringement by defendants of claim No. 1 of each of two patents: 1,773,891 (hereinafter called the voting switch patent) and 1,877,150 (hereinafter called the vote recorder patent).. These two patents, collectively, are hereinafter called the patents in suit.

The answer of the defendants, in addition to setting up the invalidity and non-infringement of the patents in suit, contained a request, by way of counterclaim, for a declaratory judgment that title of the Letters Patent of the patents in suit is, in equity and good conscience, in the inventor, Marshall Thompson, from whom the plaintiff claimed title by assignment. Before trial in the lower court, plaintiff's motion to dismiss this civil action, without prejudice, was denied.

After rather elaborate findings of fact, the District Judge, as conclusions of law, found claim No. 1 of each of the patents in suit to be valid and legal title to these patents to be in plaintiff; and the judge found that claim No. 1 of each of these patents was not infringed by either of the defendants. Accordingly, the trial judge's finding that the plaintiff was not entitled to the relief prayed for in its complaint resulted in a decree dismissing for want of equity the complaint with respect to infringement, from which the plaintiff appealed to this court; while from that part of the decree which for want of equity, dismissed the counterclaim of the defendants with respect to title to the patents in suit, a cross-appeal to this court was taken by the defendants.

We do not find it necessary to pass upon the merits of the issue of title to the patents in suit. Since we believe that the trial judge was correct in holding there was here no infringement, that holding is sufficient justification, in itself, to affirm the decree of the lower court dismissing the complaint. We believe the counterclaim should be dismissed on the ground that this counterclaim sought a declaratory judgment to the effect that title to the patents in suit is in the original inventor, Marshall Thompson, who was not a party to the action as it was originally brought, nor has he been made a party to this action by any subsequent proceeding therein. True, he appeared as a witness in the trial of the case; but that is not sufficient, and in no proper sense does it make him a party to the action. When (as in this case) A brings an action for patent infringement against B and C it is quite proper and is a perfect defense for B and C (upon an issue properly framed) to show a lack of title to the.patent in A. But when B and C go further and affirmatively seek a binding decree that title to the patent is in D, then D would seem to be an indispensable party to that proceeding. So that no such decree should be passed when D is not a party

944

either to the original action or to this proceeding. See Federal Declaratory Judgment Act, Section 274d, 28 U.S.C.A. § 400; Rule 57 Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Notes to Rules of Civil Procedure (1934) p. 55; 3 Moore's Federal Practice, p. 3226; Borchard, Declaratory Judgments (1934) p. 104; Rule 19(b), Federal Rules of Civil Procedure; Dobie on Federal Procedure, p. 217. See, also, Shields v. Barrow, 1854, 17 How. 130, 15 L.Ed. 158; Talbutt v. Security Trust Co., E.D.Ky. 1938, 22 F. Supp. 241; Duro Test Corp. v. Weisbach Street Lighting Co., D.C.Del.1938, 21 F. Supp. 260; Williams v. Bankhead, 1873, 19 Wall. 563, 22 L.Ed. 184. To these might be added the oft-cited statement of Circuit Judge Sanborn in Donovan v. Campion C.C.A.Colo.1898, 85 F. 71, 72: "Every indispensable party must be brought into court, or the suit will be dismissed."

This brings us to the question of infringement. Claim 1 of the voting switch patent (No. 1,773,891) is as follows: "An individual voting mechanism for electrical voting systems having a plurality of different voting circuits, a reset circuit, and a locking circuit, said mechanism comprising a plurality of manually operable switches for controlling said voting circuits, means for locking said switches against operation and retaining said switches in operative position, means for preventing actuation of two or more switches at one time, an electromagnet for releasing said retaining means, a switch for controlling said electro-magnet, a second electro-magnet for actuating said locking means to permit actuation of said voting switches, and a switch for controlling said second magnet."

Claim 1 of the vote recording patent (No. 1,877,150) is as follows: "A mechanism for making a permanent record of votes cast through a plurality of individual voting circuits in an electrical voting apparatus comprising a plurality of plungers for making indications on a card, a traveling carriage, and means carried by the carriage and controlled by the individual voting circuits for actuating said plungers."

Plaintiff here, we think, is upon the horns of an embarrassing dilemma. If these claims be very broadly construed (which plaintiff's counsel at first asked in oral argument), then we think the patents in suit would be invalid under the prior art as manifested in the Bobroff, Dyer,

Thompson, Sproat and Edison patents. If these claims be rather narrowly construed (which we think is proper), then we are convinced that the differences between the devices of plaintiff and the devices of defendants are so many in number and so striking in character that there is no infringement. Counsel for plaintiff, at the beginning of the oral argument, seemed to interpret plaintiff's claims rather in terms of function; later in the argument, this counsel appeared to base the plaintiff's claims on the theory of a novel and unique combination of hitherto well known mechanical elements.

On the question of infringement of the voting switch patent (No. 1,773,891), the District Judge said: "Claim 1 of patent 1,-773,891 is restricted to a voting station that contains (a) a plurality of manually operable switches for controlling the voting circuits, with (b) means for locking the plurality of switches against operation and retaining the plurality of switches in operative position. The claim is limited to (c) means to prevent actuation of two or more of the switches at one time. The claim also requires (d) two electro-magnets, in the voting station, one for releasing the retaining means for the plurality of switches and another for actuating the locking means. Defendant's structure does not contain elements a, b, c, d and does not come within the scope of the claim."

This statement may be briefly amplified. In the plaintiff's device, the voter indicates the nature of his vote (e. g., aye, no) by pressing one of the several appropriate buttons; in defendant's device, there are no buttons for that purpose but a movable toggle-switch which indicates the different nature of a vote by the position of the toggle-switch. Or, to phrase the same idea in different words, plaintiff employs a plurality of push-buttons, defendants use a pivoted or lever contactor. The vote registering station of plaintiff is classified as direct operating, in which the primary or manually operated switch closes the voting circuit; that of defendants is indirect operating, in which the primary or manually operated switch closes a circuit controlling a secondary circuit closer, with the voting circuits closed by the secondary circuit closer. As to the reset circuit and locking circuit, plaintiff uses two magnets, a reset magnet and a locking magnet, which require a circuit for each; defendants employ a single cradle-release magnet. In the

device of plaintiff is a shuttle plate which is necessary to prevent the actuation of two or more separate push-buttons upon the same vote; whereas, the toggle-switch of defendants is never locked against operation, since it is quite impossible with it to vote more than one way at a time, and defendants use a hinged and lockable cover. Again, defendants have no correction button or correction switch which is used by plaintiff; but the toggle handle, which registers the vote, is also used by defendants to correct any incorrect votes.

Claim 1 of the plaintiff's vote recorder patent (No. 1,877,150) specifies (among other things) "a traveling carriage, and means carried by the carriage" for "making a permanent record of votes cast." Of course there is nothing new about the idea of recording votes by perforating a record card. There may, however, be new methods of bringing this about. Some vote recorders operate with stationary recording magnets and stationary paper; others, with stationary recording magnets and with a paper feed, as in the case of the device of defendants, which uses no travelling carriage whatever, and still a third type of vote recorder, which is the case of plaintiff's device, employs stationary paper and a travelling carriage carrying the recording magnets, so that (in this type) the travelling carriage actually carries the means for actuating the recording plungers. The selector or commutator of defendants is not, in any proper sense, a "travelling carriage", nor can the brushes or wipers thereon (for the purposes of this case) be deemed the "means carried by the carriage". Connected only by wiring, the voting station, the selector and the recorder, in the device of defendants, are three distinct, separate mechanisms. The opinion of the court below thus crisply sums up this situation: "Claim 1 of Patent No. 1,877,150 is restricted to a vote recorder having a travelling carriage, where the travelling carriage itself carries means to actuate plungers for indicating votes on a record card. Defendants' recorder has no travelling carriage, and no means carried by the travelling carriage and controlled by the individual voting circuits for actuating the recording plungers."

We accordingly affirm the judgment of the District Court.

Affirmed.