**BARCLAY & CO., Inc. v. NECCHI SEWING MACH. SALES CORP. et al.**

United States District Court
S. D. New York.

Dec. 5, 1951.

Mock & Blum, New York City, Asher Blum, New York City, of counsel, for plaintiff Barclay.

Gordon, Brady, Caffrey & Keller, New York City, Zachary T. Wobensmith, II, Philadelphia, Pa., of counsel, for Standard Sewing Equipment Corp.

Harry Price, New York City, Harry Price and Morris Hirsch, New York City, of counsel, for Necchi Sewing Mach. and Jolson.

RYAN, District Judge.

Plaintiff moves for an order granting, during the pendency of this action, the same injunctive relief that it seeks on final judgment.

Plaintiff, Barclay and Company, Inc., is a Washington corporation organized in 1946. Its principal place of business is in Seattle; it also maintains an office within this district.

Barclay has imported sewing machines manufactured by the Sanshin Sewing Machine Co., Ltd., in Japan, under the mark "Sewmor"; shipments from Japan have been made to Los Angeles and New York City. Barclay received its first shipment on January 10, 1951 and its last on June 21, 1951. All of these "Sewmor" machines were sold directly by Barclay to Consolidated Sewing Machine and Supply Co., Inc., a New York corporation whose principal place of business is within this district. These sales were under agreement which made Consolidated the exclusive vendee of all "Sewmor" machines imported by Barclay.

Defendant, Necchi Sewing Machine and Sales Corp., is a New York corporation organized in 1948 and having its principal place of business within this district. The individual defendant, Leon Jolson is and since 1948 has been president of Necchi. We assume for this decision that Jolson "has controlled and directed and dominated and operated said corporate defendant" particularly with respect to the acts pleaded in the complaint.

The corporate defendant has been an importer exclusively of the Necchi Sewing machine which is manufactured in Italy.

This suit, asserted by plaintiff to be brought under the provisions of §§ 2201 and 2202, 28 U.S.C.A., for a declaratory judgment, asks for judgment declaring invalidity of Design Patent No. D–160,500, issued by the United States Patent Office on October 17, 1950 to the defendant Necchi Sewing Machine Sales Corp. on application filed August 1, 1950 by defendant Jolson. The patent covers the design of the Necchi Sewing machine manufactured in Italy and now marketed in the United States by the defendants. Plaintiff also prays for an injunction, *pendente lite* and permanent, enjoining defendants from enforcing any rights under this patent, and for an order, preliminary and permanent, "commanding defendants to represent to all authorities which have any jurisdiction to prevent the importation of said machine (meaning thereby of the make and type imported by plaintiff) from Japan to the United States of America, that defendants withdraw and cancel all alleged rights under said Design Patent No. D–160,500."

Defendants, by answer, allege that plaintiff is merely an agent for Consolidated and Famous Brand Sewing Machine Co., also a New York corporation, and that these corporations are the actual and real parties in interest. Defendant pleads as a defense that the court is without jurisdiction for the reason that the legal and record owner of the patent in suit is not a party to the action, and further that "neither defendant at any time has issued any oral or written threats, warnings, or allegations of infringement as against the plaintiff," Consolidated, Famous or their customers based upon Design Patent No. D–160,500. Defendants further allege as a defense that plaintiff and its principals "have copied the distinctive shape, appearance and dress of the Necchi Sewing machine which have acquired a secondary meaning", and have been guilty of palming off imitations as Necchi Sewing machines.

By way of counterclaim, the defendants allege that the plaintiff has been guilty of unfair competition in misrepresenting the machine which it and its principals market and palming it off as the Necchi machine covered by the design patent in suit. De-

fendants pray for affirmative relief and ask for a temporary and permanent injunction restraining plaintiff and its principals from further importation or sale of "imitation sewing machine embodying the distinctive shape, dress, appearance and outline of the original, unique and distinctive Necchi machine," and from continuing to associate their machines with the Necchi name. It is not disputed that the defendant Necchi has during the past several years imported from Italy and sold throughout the United States Necchi machines in the following quantities: 1948—7500 machines; 1949—19,000 machines; 1950—39,000 machines; 1951 (through September)—32,000 machines, or a total of 97,500 Necchi machines sold during this period of 3 years and 9 months. Nor is it disputed that Necchi expended the following sums advertising and promoting the Necchi machine in the United States: in 1948—$50,000.; 1949—$200,000.; 1950—$575,000.; 1951—$650,000., or a total during this period of $1,475,000. This advertising has been carried in popular magazines of large and national circulation, as well as in newspapers and trade publications.

Defendant, Jolson, filed on August 1, 1950, an application in the United States Patent Office for a Design Patent for a sewing machine. He executed an assignment to the corporate defendant on July 28, 1950 and under this assignment Design Patent No. D–160,500 was issued on October 17, 1950 to the corporate defendant. Later this design patent was assigned to the Italian manufacturer of the Necchi machine, Vittorio Necchi Societa Per Azioni, by instrument dated July 28, 1950, executed by the corporate defendant and recorded in the Patent Office on June 13, 1951.

Both the Necchi and the Sewmor machines are the so-called "zig-zag" type sewing machines adapted for home use. Apparently, there are no "zig-zag" machines manufactured in the United States. Based upon what appears to be reliable information, it is stated that 60% of all "zig-zag" sewing machines imported into the United States are the Necchi machines imported by defendants from Italy.

It appears that there was filed with the Ministry of International Trade and Industry of the Japanese Government (MITI) a complaint alleging that the "Sewmor" machine of Sanshin manufacture was an infringement on the Design Patent No. D–160,500 issued on the Necchi machine. The MITI, with the approval of the Supreme Commander of the Allied Powers in occupation of Japan determined that " * * * The copy of U. S. Design Patent #160,500 on file with the Ministry has established a *prima facie* case which is sufficient to bar further export of these machines to the U. S. until such time as the patent has been declared invalid by the competent U. S. courts or cancelled by the U. S. Patent Office."

Following this, and at least since May 4, 1951, the further export of the Sewmor machine to the United States has been prohibited by the Japanese Government except on export license issued by the government pursuant to its laws, and no further shipments have been made to plaintiff.

It is the claim of Barclay that the Design Patent No. D–160,500 is not infringed by the Sewmor machine, although it is apparent from visual inspection and it is not disputed that the Sewmor and Necchi machines, covered by the Design Patent, are identical in outward appearance, contour, form and general outline. It does not infringe, Barclay contends, because Design Patent No. D–160,500 is invalid by reason of the fact that (1) the design was in the public domain and public use for more than one year prior to the filing of the application for the patent on August 1, 1950, 35 U.S.C.A. § 31; (2) the patent was applied for and secured by one who was not the true inventor, 35 U.S.C.A. § 31; (3) the patent was procured by the false and fraudulent statement under oath that the design had not been in public use prior to August 1, 1949; and (4) there is nothing new or novel about the general shape and appearance of the machine covered by the design patent.

Barclay, in support of this claim of invalidity of Design Patent No. D–160,500 has submitted proof from the records of

518

the United States Customs' Appraisers' Office at No. 201 Varick Street, New York, to show that machines allegedly similar in design to those covered by the design patent were imported by defendants from Italy for sale in the United States prior to August 1, 1949. Barclay has also submitted evidence to show that one of these machines so imported, bearing Serial No. 82,-533 was sold by the B & B Sewing Machine Co., No. 739—6th Avenue, N. Y., as early as September 13, 1948. In addition, Barclay has offered for our inspection and examination a machine manufactured in Italy and sold in the United States since 1948, under the mark "Visnova." The "Visnova", it is argued, was a prior use of the non-functional design and form covered by the design patent in suit. It is defendants' contention that the Visnova machine is of a different general appearance from that of the Necchi machine. We find it unnecessary to determine at this time the merits of this issue.

It appears that the design of the Necchi is readily distinguishable from the other machines of foreign manufacture exhibited to us, save, of course, from the Sewmor, which is an admitted imitation as to design. But, there, the likeness between the Necchi and the Sewmor stops.

The Necchi machine has a high-carbon steel operating parts; it is a product of precision workmanship; Necchi is well-known in the customer and wholesale markets as a result of promotion and advertising.

The Sewmor machine has operating parts of low-carbon steel; it is not of precision workmanship. It is claimed that the low-carbon steel used in the construction of these operating parts in the Sewmor is too soft to stand up under normal operation, that the parts quickly wear out giving rise to the need for many and frequent repairs. We have had little evidence submitted that the mark has been accepted in the market, although it is stated that at least $50,000 has been spent promoting Sewmor sales in the United States.

The difference between the two machines is reflected in their sales price at retail levels: the Necchi brings about $248., the Sewmor about $100. less.

■ One of the principal matters in dispute between the parties is the validity of the Design Patent No. D-160,500; present validity, infringement by copying is not in issue. We assume the purchase, sale and prior use of a Necchi machine, disclosed by plaintiff's affidavits, to have taken place in September, 1948. There must, however, be identity in the design of this machine with that of the design patent before it may be held that a statutory abandonment has been effected. The defendants point to five allegedly, non-functional differences or improvements which they urge were first disclosed in the application for the design patent in suit, and which do not appear in the construction of the prior Necchi machine which is relied upon by plaintiff as anticipatory. When these differences are viewed in the light of the presumptive validity of the patent, we hesitate to hold on this motion for summary relief and without trial that these differences are neither material nor substantial. Nor may we say without opportunity for more ample exploration and examination of the subject on trial that nothing disclosed by the design patent is non-functionally new, novel or distinctive.

As to the contention that the design patent is invalid because procured by a false and fraudulent statement of Jolson under oath that he was the inventor and author of the design, we feel that it would be rash and unjust to make a determination on this without proof of far greater weight than that now submitted by plaintiff. This is an issue to be resolved by trial. Jolson has sworn that he was the inventor and author; for purposes of this motion, we accept that statement as true.

■ Plaintiff's proof has not been of such weight and quality as would support a finding now that the design patent is invalid. But assuming, *arguendo*, that plaintiff's proof is of sufficient probative value, the invalidity of the design patent may not be adjudicated in this suit as the patent owner is not a party. Hook v. Hook & Ackerman, 3 Cir., 1951, 187 F.2d 52, 59.

■ We may not accept this action as one for a declaratory judgment as the record owner of the design patent is not a party. "Disputes between a bare licensee and an alleged infringer as to the validity or infringement of a patent owned by another present no 'actual controversy' such as the Federal Declaratory Judgment Act, 28 U.S.C.A. § 400, requires." (Citing cases.) Contracting Division v. New York Life Ins. Co., 2 Cir., 1940, 113 F.2d 864, 865. What we have here is essentially a dispute between two selling agencies as to the validity of the design patent under which the product sold by one of them is manufactured. Ownership, or a tantamount interest, in the design patent is vested in neither of the parties. The complaint must be treated as a bill in equity seeking injunctive relief against defendants for unfair competition, coupled with a claim for damages.

We also find it difficult to understand exactly under what other possible theory the defendants hope to receive affirmative relief under the counterclaim.

■ In any event, we do not regard the plaintiff as being in any position to ask equitable relief in advance of trial. Plaintiff markets a sewing machine which is an admitted copy in appearance and design of the Necchi machine. Photographs of advertisements of dealers, said to be in privity with, if not the principals of plaintiff, present much in support of defendants' contention of palming-off. At least, there is enough to prevent these charges from being lightly viewed or dismissed as without foundation in fact. "The wise and expedient procedure, from the standpoint of the plaintiff itself, would be to defer the granting of the full relief sought until the trial, after both sides have had an ample opportunity to submit their proofs." Maison Prunier v. Prunier's Restaurant & Cafe, 1936, 159 Misc. 551, 288 N.Y.S. 529, 537.

■ Then, too, defendants claim that the Necchi machine has a characteristic appearance and non-functional design, which by usage and advertising has acquired a secondary meaning; that the machine by its design is immediately recognized by the trade and a large segment of the general public as the Necchi Machine, and that this is so regardless of whether the name Necchi does or does not appear on the machine. Because of the money spent on advertising and the volume of sales, which may well be considered large in view of the price and special character of the machine, we feel that this claim presents an issue of substance. If it be held on trial that the Necchi design has acquired a secondary meaning, the further sale of the Sewmor imitation may be restrained in a suit filed by the manufacturers as an act of unfair competition. Cheney Bros. v. Doris Silk Corp., 2 Cir., 1929, 35 F.2d 279, 280. We may not hold as a matter of law on the showing made before us that the design of the Necchi machine has not acquired a secondary meaning. If this be so, plaintiff is not in a position to seek equitable relief.

And, quite apart from the propriety or wisdom of the issuance at this time, of a mandatory injunction directing defendants to take affirmative action withdrawing the complaint before the MITI, the agency of the Japanese Government, it is doubtful whether such action would be productive of the result plaintiff seeks. The opinion of an expert on Japanese law submitted on this motion gives rise to a serious question as to this. We are informed by this attorney, said to be an expert on the subject, that "it is the announced practice of the Japanese Government to discourage questionable commercial practice in international trade involving mimicry of foreign goods." If this be so, it would seem that the order of the Miti in refusing an export license might be continued regardless of the invalidity of the design patent.

While it is true that no action was filed by the record owner of the patent to restrain or prevent infringement of the Necchi design patent, we cannot say that there was such an unreasonable lapse of time after the filing of the complaint with the Japanese Government against further importation of the Sewmor machine as would lay the basis for an injunction against the defendants. Cf. Adriance, Platt & Co. v. National Harrow Co., 2 Cir., 121 F. 827. We do not find the proof before us sufficient

to indicate either "lack of an honest belief in the legal rights asserted" by defendants on their own behalf or on that of the present owner of the design patent, or enough to support a finding of bad faith on their part. Kaplan v. Helenhart Novelty Corp., 2 Cir., 182 F.2d 311, 314.

There are no facts presented to establish that irreparable loss and injury will result to plaintiff from the denial of 'preliminary injunctive relief. Any damage which may be sustained by plaintiff 'through defendants' alleged wrongful acts may be measured by pecuniary standards. It is injury to its business which in so far as the sales of the Sewmor machine are concerned is of very short duration, commencing only with the first shipment to it of machines from Japan in January, 1951. The balance sheet of the defendant corporation seems to indicate that it is financially able to respond in damages.

We conclude that plaintiff's application for injunctive relief pending trial should be denied. Should plaintiff be so advised an application may be made to the calendar judge of this court for a trial preference. Defendants' Motions—

We now come to a consideration of the motions made by defendants.

(1) Defendants move for an order "dismissing the complaint for lack of jurisdiction under the patent laws and under the laws relating to diversity of citizenship."

The legal and record owner of the design patent in suit—Vittorio Necchi Societa Per Azioni—is not before the court as a party. The two named defendants have no right, title or interest in the patent. As we have noted before jurisdiction cannot be predicated under the Declaratory Judgment Act or upon a claim arising under the patent.

Jurisdiction must be sustained on diversity of citizenship.

It is the contention of defendants that plaintiff is merely an importing agent with no real interest in the outcome of the action, and that plaintiff sues actually on behalf of others prompted by a desire to at-

tempt to give this court a spurious diversity of citizenship jurisdiction. This presents an issue which in the interests of economy of judicial time we feel should be left to the trial court. At present, we hold that the court has jurisdiction by reason of diversity on the claim alleged for unfair competition.

Motion by defendants to dismiss for lack of jurisdiction is denied.

(2) Defendants also move for an order "adding as additional parties plaintiff or defendant Famous Brands Sewing Machine Company, 390 Bridge Street, Brooklyn, New York, and Consolidated Sewing Machine and Supply Co. Inc., 135 West 25th Street, New York, both of whom are within the jurisdiction of this court." Defendants base this motion upon the claim that Consolidated and Famous Brands are the real parties in interest.

While Rule 17, Fed.Rules Civ.Proc. 28 U.S.C.A., provides that "Every action shall be prosecuted in the name of the real party in interest", the absence of the real party in interest makes available the defense of "failure to join an indispensable party." Rule 12(b) (7). The defendants have pleaded this defense under a liberal construction of their "Second Defense."

The motion may not be granted under Rule 13(h) because the presence of Consolidated and Famous Brands is not "required for the granting of complete relief in the determination of a counterclaim or cross-claim". There is no claim over which would permit the joinder under Rule 14, nor may the joinder be granted under Rule 19. The motion is denied.

█ Plaintiff also moves for leave to take the depositions of defendants and other persons under Rule 26(a). This motion was made by plaintiff within 20 days from the commencement of this action. More than 20 days have now elapsed, and plaintiff may proceed to take this testimony as a matter of right; an order is no longer necessary.

Separate orders shall be settled on each motion.