The **CALDWELL MANUFACTURING CO.**, Plaintiff,

v.

**UNIQUE BALANCE COMPANY, Inc.**, Defendant.

United States District Court
S. D. New York.
Sept. 22, 1955.

Roger T. McLean, New York City, for plaintiff, John P. Murphy, Washington, D. C., of counsel.

Campbell, Brumbaugh, Free & Graves, New York City, for defendant, Dana M. Raymond, New York City, of counsel.

HERLANDS, District Judge.

This is an action for a declaratory judgment of invalidity of a patent or non-infringement or both. Defendant is the licensee under an agreement with the patentees, his licensors, giving defendant the right to manufacture and vend a sash balancing mechanism in the United States. Plaintiff is the owner of another patent dealing with the same subject. In this action, plaintiff has not joined defendant's licensors as parties defendant.

This suit was commenced by the filing of a complaint on the morning of June 8, 1955. Later that same day, defendant herein, joined by his licensors-patentees, instituted an injunction action for patent infringement in the Western District of New York. The defendant in the Western District action is the plaintiff in the Southern District action.

The motions before this Court are those of the defendant-licensee seeking, in the alternative: (1) dismissal of the Southern District action; (2) transfer of the Southern District proceedings to the Western District; or (3) a stay of the Southern District proceedings pending final determination of the patent infringement action in the Western District. Disposition of the first two motions will render unnecessary any discussion of the motion to stay the Southern District proceedings.

The Motion to Dismiss.

Defendant moves to dismiss this action under Fed.Rules Civ.Proc. Rule 12(b) (7), 28 U.S.C.A.,[1] for plaintiff's failure to join as co-defendants the defendant's licensors-patentees. Defendant-licensee claims that his licensors are indispensable parties.

Resolution of this motion involves a consideration of: the test of indispensability under F.R.C.P., Rule 19(a);[2] the test of indispensability with reference to a licensor of patent rights; and the construction of the license agreement between the absent licensors-patentees and the defendant-licensee to ascertain whether the parties to that agreement

1. Rule 12(b), F.R.C.P.: "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * (7) failure to join an indispensable party."

2. Rule 19(a), F.R.C.P.: "(a) Necessary Joinder. Subject to the provisions of Rule 23 and of subdivision (b) of this rule, persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants. When a person who should join as a plaintiff refuses to do so, he may be made a defendant or, in proper cases, an involuntary plaintiff."

The principle of indispensability applies to suits for a declaratory judgment. Samuel Goldwyn, Inc., v. United Artists Corporation, 3 Cir., 1940, 113 F.2d 703. Logically, an indispensable party must be joined in a declaratory judgment action since otherwise the court could not proceed to enter an equitable judgment and the purpose of the procedure would be frustrated. However, the flexibility inherent in the declaratory procedure indicates that there may be times when the court will be able to proceed without prejudicing the rights of absentees, although the same result would be more difficult to reach under stricter procedures. See Texas & P. Ry. Co. v. City of New Orleans, 5 Cir., 1947, 159 F.2d 77; Texas & P. Ry. Co. v. Brotherhood of Railroad Trainmen, D.C.W.D.La.1945, 60 F.Supp. 263.

have, by its terms, resolved the indispensability issue.

■■ The enactment of Rule 19(a) was not intended to change the rules governing compulsory joinder as laid down by existing case law.[3] Shields v. Barrow[4] still furnishes the fundamental definition of an indispensable party. Unless the absence of an indispensable party is subsequently cured by his joinder, dismissal must result.[5] Such defect is jurisdictional.[6]

The comparatively easy statement of the rule belies the difficulty in applying it to specific situations where the question of indispensability has been raised. This is especially so where patent rights are involved. The complexity of the problem is, perhaps, best illustrated by the plethora of judicial commentary.

■■ The transfer of interest in a patent necessarily deals with a monopoly; and this monopoly may not be divided into segments except as authorized by the laws conferring the monopoly.[7] Moreover, where someone other than the patentee has been permitted to sue for infringement of the patent, this right has been predicated not upon the real party in interest concept[8] but upon the statutes governing patents. In the application of the patent laws to successors in interest, distinctions have been made by the courts between the types of interest the licensor-patentee purported to create.[9]

■■ In determining the issue of the parties before the Court, the type of license involved must be carefully examined. For example, the license may be so limited that, by its very terms, the licensee obtains no rights against infringers of the patent. Thus, a "bare" licensee[10] may neither sue alone[11] nor join with the licensor-patentee[12] in an infringement action, for he has been held not to be a necessary party to a suit brought by the licensor-patentee to pro-

3. Weason v. Crain, 8 Cir., 1948, 165 F. 2d 6.

4. 1854, 17 How. 129, 139, 15 L.Ed. 158: "Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and in good conscience" are indispensable parties. In subsequent decisions, indispensability resulted simply because the decree would be of "immediate concern as to them [absentees]", State of Texas v. I. C. C., 1922, 258 U.S. 158, 163, 42 S.Ct. 261, 263, 66 L.Ed. 531, and because their "rights * * * are so entangled with one another that it is practically impossible in the decree to protect those who are absent." Roos v. Texas Co., 2 Cir., 1927, 23 F.2d 171, 173, certiorari denied, 1928, 277 U.S. 587, 48 S.Ct. 434, 72 L. Ed. 1001.

5. Calcote v. Texas Pac. Coal & Oil Co., 5 Cir., 1946, 157 F.2d 216, certiorari denied, 1946, 329 U.S. 782, 67 S.Ct. 205, 91 L.Ed. 671.

6. Fireman's Fund Ins. Co. v. Crandall Horse Co. of Buffalo, New York, D.C. W.D.N.Y.1942, 47 F.Supp. 78.

7. Waterman v. MacKenzie, 1891, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923; Crown Die & Tool Co. v. Nye Tool & Machine Works, 1923, 261 U.S. 24, 43 S.Ct. 254, 67 L.Ed. 516.

8. Berghane v. Radio Corp. of America, D.C.D.Del.1947, 6 F.R.D. 561. See 16 Stat. 203 (1870), R.S. § 4898 (1878), 35 U.S.C. § 47 [1952 Revision 35 U.S.C.A. § 261] (Assignments of patents and applications; evidence of execution.); 16 Stat. 207 (1870), R.S. § 4919 (1878), 35 U.S.C. § 67 [1952 Revision 35 U.S.C.A. §§ 281, 284] (Infringement of patent; damages for.)

9. Waterman v. MacKenzie, supra, note 7.

10. Western Electric Co. v. Pacent Reproducer Corp., 2 Cir., 1930, 42 F.2d 116, certiorari denied, 1930, 282 U.S. 873, 51 S.Ct. 78, 75 L.Ed. 771.

11. Gayler v. Wilder, 1850, 10 How. 477, 13 L.Ed. 504; Waterman v. MacKenzie, supra, note 7; Western Electric Co. v. Pacent Reproducer Corp., supra, note 10.

12. Ibid.

tect his monopoly.[13] A problem arises as to who should redress the licensee's injuries when the licensor-patentee promises that the license shall be exclusive. Under such a license it may be assumed that the licensee has a definite interest in the prevention of the patent's use by others, despite the fact that the exclusive license does not constitute an assignment of the interests in the patent within the classic definition of Waterman v. MacKenzie.[14] In general, the earlier cases tended to categorize a claimant as either an "assignee" or a "licensee." The apparent distinction was that, in an infringement suit brought by a licensee, the licensor-patentee was an indispensable party because legal title remained with the licensor-patentee.[15]

The question of indispensability vis-à-vis the licensor-patentee becomes all the more acute when we consider the very nature and purpose of the declaratory judgment procedure.[16] Is there a "case or controversy"[17] in the absence of the licensor-patentee?

In Contracting Division, A. C. Horn Corp. v. New York Life Ins. Co.,[18] the Circuit Court of Appeals for the Second Circuit held that a dispute between a "bare" licensee and an alleged infringer with respect to the validity or infringement of the licensed patent did not present an actual "controversy" such as is required by the Federal Declaratory Judgment Act.

In A. L. Smith Iron Co. v. Dickson[19] the Circuit Court of Appeals for the Second Circuit reversed the trial court which had dismissed the complaint (in so far as it sought a declaratory judgment concerning the patent's validity) on the ground that the licensor-patentee was not a party thereto. The Circuit Court of Appeals, carefully delineating the application of its decision, pointed out: (1) The licensee could not have sued upon the patent in his own name because, having only a license to make and vend, he was not an assignee within the MacKenzie rule and, lacking that status, he did not have a sufficient proprietary interest to prosecute the merits of the patent. The Court found, however, that the licensee had represented to plaintiff that he did possess the power to sue in his own name. Hence, a species of estoppel was invoked against the licensee.

---

13. Comptograph Co. v. Universal Accountant Machine Co., C.C.N.D.Ill.1906, 142 F. 539.

14. In which case, although plaintiff had been granted "the sole and exclusive right and license to manufacture and sell" the patented item, the suit for infringement brought in his name was dismissed because he was held to be a mere licensee, not an assignee or grantee.

15. Independent Wireless Telegraph Co. v. Radio Corporation of America, 1926, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357; Society of European Stage Authors & Composers, Inc., v. WCAU Broadcasting Co., D.C.E.D.Pa.1940, 1 F.R.D. 264; Contracting Division, A. C. Horn Corp. v. New York Life Ins. Co., 2 Cir., 1940, 113 F.2d 864 (non-exclusive licensee may not bring suit for infringement; and, therefore, defendant may not counterclaim for declaratory judgment of non-infringement and invalidity in the absence of the patentee); American Signal Corporation v. International Roll-Call Systems, Inc., 4

Cir., 1940, 110 F.2d 942 (defendant in patent infringement suit may not counterclaim for a declaration that the title to the patent is in a third party without joining the latter).

16. 28 U.S.C. §§ 2201, 2202; Rule 57, F.R. C.P. The Declaratory Judgment Act does not create substantive rights and does not itself confer federal jurisdiction. Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 1937, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617.

17. Ibid. The declaratory judgment proceeding may be maintained only where it will serve a useful purpose in clarifying and settling the legal relations involved, and will terminate and afford relief from the insecurity and controversy giving rise to the proceeding, Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 1937, 92 F. 2d 321.

18. Supra, note 15.

19. 2 Cir., 1944, 141 F.2d 3.

(2) The judgment would not bind the licensor-patentee because it could sue plaintiff's customers at any time thereafter. (3) The potential "stain" of a judgment of invalidity of the patent could be obviated by according the licensor-patentee an opportunity to intervene. The Court concluded, therefore, that the licensor-patentee's sole remaining interest in a dismissal of the complaint concerned, at most, the choice of forum in which to vindicate his rights. (4) The interest of the licensor-patentee in the selection of a forum was deemed "an interest proper to be weighed against the plaintiff's interest in settling its present controversy with" the licensee; but this interest was nullified, "for it would be obviously unfair to leave its [plaintiff's] business exposed to continuous indirect attack, merely to preserve the company's [the licensor-patentee's] choice of forum—at least when, as here, the forum open to it is a court having jurisdiction over patents." (5) The li-censor-patentee "went further than merely to license Dickson [the licensee]; it not only exacted a promise from him not to 'permit' its interests to be 'prejudiced,' but it now authorized him to issue such licenses under its patent. It has plainly used him to enforce its patent, and if it has not surrendered its choice of forum, at least its interest in that choice has dwindled too much to stand against the plaintiff's."

Recent case law has tended to articulate the implicit denominator in the Dickson case. The emphasis today is upon the ability to bring suit to protect the patent against infringement; and, as a manifestation of that power, to be free to select the forum in which the question of infringement should be tried. Instead of predicating the right to sue upon the semantic categorization of litigants as "licensees" or "assignees," the more recent cases have tended to place reliance upon the right to bring suit in affirmance of the patent.[20] Then, assuming that

20. In American Optical Co. v. New Jersey Optical Co., D.C.D.Mass.1943, 50 F. Supp. 806, the Court found that "plaintiff is not a 'bare' licensee, but is an exclusive licensee with power to bring suit in his own name or in the name of the patent owner." 50 F.Supp. at page 809.

In Alamo Refining Co. v. Shell Development Co., D.C.D.Del.1951, 99 F.Supp. 790, plaintiff relied on the Dickson case to support its contention that it could maintain against an agent a declaratory judgment proceeding to obtain an adjudication of the validity and infringements of patents whose owner was not before the Court. It was held:

"The Dickson case is not in point. That case is *res integra* and does not support plaintiff's position here. There are, at least, five points of distinction. The case of Contracting Division, A. C. Horn Corporation * * * has been recognized, both before and after the Dickson case, as establishing the orthodox rule, applicable to cases not involving the peculiar fact background of the Dickson case, that a non-exclusive licensee can neither maintain an infringement suit nor provoke an 'actual controversy' under the declaratory judgments statute." 99 F.Supp. at page 800.

In Barclay & Co., Inc., v. Necchi Sewing Mach. Sales Corp., D.C.S.D.N.Y.1951, 101 F.Supp. 515, Judge Ryan held that the patent in issue could not be adjudicated in a declaratory judgment proceeding where its owner was not before the Court.

In Helene Curtis Industries, Inc., v. Sales Affiliates, Inc., 2 Cir., 1952, 199 F.2d 732, the Court of Appeals for the Second Circuit found that under the "terms of the 'assignment,'" defendant retains the right at its own expense to conduct all Patent Office proceedings, to grant licenses, to bring and defend suits at its own expense, and to take the proceeds." 199 F.2d at page 733. The Court concluded, therefore, "that defendant controls", so that the record owner of the patent was not indispensable.

In United Lacquer Mfg. Corp. v. Maas & Waldstein Co., D.C.D.N.J.1953, 111 F.Supp. 139, the Court narrowed the issue to an examination of the exclusive licensee's right to sue for infringement of the patent, since, if he had that right, then suit would lie against him. "The right of suit, the crux, exists, regardless of its source. Nothing in the license agreement revokes defendant's implied right to sue, * * *." 111 F. Supp. at page 142.

right exists in the licensee, the licensee may be sued to test the validity of the licensed patent without the licensor-patentee's being joined as a party defendant.

Where a licensee has been denied the right to sue, such denial was predicated upon two policy considerations: (1) the interest of the alleged infringer to be immune from a subsequent suit by the licensor-patentee; and (2) the interest of the licensor-patentee to be free to select his own forum. These considerations are obviated when the licensor-patentee is deemed to have surrendered the right to sue to his licensee because (1) *res judicata* attends the success or failure of the licensee so designated to bring suit; and (2) the licensee so designated to bring suit is deemed to be "owner" of the patent for the purpose of selecting his own forum.

■ Although it purports to grant exclusive rights, the agreement in the case at bar is circumscribed sufficiently to warrant a finding that the ultimate power of litigation is retained by the licensor-patentee. The license is limited to one field. The license is terminable for failure to pay specified royalties to the licensor-patentee. The licensor-patentee agrees "to maintain and enforce the exclusive character of the rights granted * * * and to bring action for patent infringement against any and all persons that may, from time to time, infringe said patent rights, * * *." In the absence of an independent right to bring an action for patent infringement, defendant-licensee herein has no independent right to defend a suit seeking a declaration as to the validity of the licensed patent. '

■ Estoppel may not be employed against defendant-licensee herein, as it was invoked in the Dickson case. Defendant's affidavit categorically denies having made any representation to plaintiff that it has the sole right to enforce the patent against alleged infringers. Defendant may bring an action only when the licensor-patentee himself fails to sue for patent infringement.[21] Since the licensor-patentee has satisfied that condition in the Western District action, instituted the same day as was this action in the Southern District, the condition precedent to an independent action by defendant-licensee has been foreclosed. This same foreclosure precludes its being sued alone in the Southern District as if it were the owner of the patent.

■ In the absence of the licensor-patentee as a party defendant in the Southern District action, this declaratory judgment proceeding must fail, since the "case or controversy" requirement is unsatisfied. Without the owner of the patent before this Court, the validity of the patent may not be adjudicated. Under such circumstances, the allegations of non-infringement and invalidity of the patent present moot issues because no substantial controversy exists pursuant to the mandate of the Declaratory Judgment Act.[22]

In Hartford Nat. Bank & Trust Co. v. Henry L. Crowley & Co., Inc., D.C.D. N.J.1954, 118 F.Supp. 899, emphasis was placed upon the fact that the agreement reserved to the licensee the right to prosecute all infringement suits.

In A. Belanger & Sons, Inc., v. Brisk Waterproofing Co., Inc., D.C.D.Mass. 1954, 116 F.Supp. 127, Judge Wyzanski found that plaintiff could proceed against the exclusive licensee without having to join the patentee, because defendant-licensee had the authority to bring infringement suits, had paid one-half the expenses and collected one-half the proceeds of such suits, and the presence of the patentee had been unknown for three years.

21. See Defendant's Exhibit, contract between Unique and patentees, p. 14, clause "X (c)."

22. An stated in the original Committee note to Rule 57, F.R.C.P. "* * * all parties having an interest therein or adversely affected must be made parties or be cited." Here, the interest of the absent licensor-patentee is substantial; it has specifically retained the right to defend the patent in issue. Therefore, since

Assuming *arguendo* that the justiciability requirement were here satisfied, the declaratory judgment procedure imparts sufficient discretion to permit this Court to refuse to proceed with such action.[23] If, therefore, judicial discretion exists to refuse to exercise jurisdiction where it is unchallenged,[24] *a fortiori* this Court is empowered to refuse to exercise jurisdiction where it is challenged by the movant who has substantiated his contention that an indispensable party has not been joined.

This Court has the power to dismiss this action on either of two grounds. It may dismiss under Rule 12(b) because the failure to join an indispensable party is a full and complete defense. It may dismiss under the Declaratory Judgment Act, because the Court has the discretion to refuse to exercise jurisdiction where substantial doubt exists whether the declaratory judgment proceeding would settle the controversy and whether the proceeding would terminate the uncertainty or controversy giving rise to the proceeding.[25]

However, this Court will not dismiss this proceeding. Dismissal is unnecessary because the Court is of the opinion that the proceeding should be transferred to the Western District. The non-joinder of an indispensable party in this Southern District action is one of the factors impelling the Court to grant the application for a transfer. Since a question has been raised with respect to the licensor-patentee's indispensable status in this Southern District action, the Court is disinclined to retain jurisdiction when it may be challenged at any stage of the proceeding.[26] In view of the fact that all of the issues raised herein may be litigated in the Western District action, where jurisdiction is unquestioned, sound judicial policy strongly suggests that this action be transferred to the Western District.

**The Motion to Transfer to the Western District**

We now consider 28 U.S.C., § 1404 (a)[27] to determine whether there is any merit to defendant's claim that the Western District is the proper forum.

The enactment in 1948 of § 1404(a) treats the doctrine of *forum non conveniens* as one of the indicia of proper venue. In contrast to the procedure prior to 1948, § 1404(a) does not require dismissal for improper venue, but permits transfer to a district where there is a more convenient forum.

Section 1404(a) calls for the exercise of the Court's discretion. In Gulf Oil Corp. v. Gilbert,[28] decided immediately

---

"declaratory relief will not be effective in settling the controversy, the court may decline to grant it." (Original Committee note to Rule 57).

23. Brillhart v. Excess Insurance Co., 1942, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620. "If the court be of the opinion that the action will not serve a useful purpose, or that it is otherwise undesirable, then it should refuse to proceed" (6 Moore, p. 3121).

24. Mr. Justice Frankfurter has stated: "Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, 28 U.S.C.A. § 400, it was under no compulsion to exercise that jurisdiction. The petitioner's motion to dismiss the bill was addressed to the discretion of the court." Brillhart v. Excess Insurance Co., 316 U.S. at page 494, 62 S.Ct. at page 1175. See Alabama State Federation of Labor v. McAdory, 1945, 325 U.S. 450, 471, 65 S.Ct. 1384, 89 L.Ed. 1725.

25. Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 1937, 92 F.2d 321; Samuel Goldwyn, Inc., v. United Artists Corporation, supra, note 2.

26. Cf. Petition of Provoo, D.C.D.Md. 1955, 17 F.R.D. 183, that the Government suffers the consequences when it chooses a district of doubtful venue.

27. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

28. 1948, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055.

prior to the enactment of § 1404(a), the Supreme Court made the following listing of some of the criteria applicable to *forum non conveniens*:

> "private interest of the litigant * * * relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical prob-

lems that make trial of a case easy, expeditious and inexpensive." [29]

The foregoing statement cannot be treated as an all-inclusive blueprint of the myriad situations requiring the exercise of judicial discretion. Moreover, the Gulf Oil Corp. case reflects a conservative view of *forum non conveniens* because, at the time of its decision, the application of that doctrine would have resulted in a dismissal of the action. Furthermore, by the subsequent enactment of § 1404(a), the doctrine of *forum non conveniens* was more than codified; it was revised.[30]

29. At page 508 of 330 U.S., at page 843 of 67 S.Ct.

30. Norwood v. Kirkpatrick, 1955, 349 U.S. 29, 75 S.Ct. 544. See N. Y. Law Journal, vol. 134, no. 55, Sept. 19, 1955, p. 4 (editorial reprinted by permission of United States Law Week): "The drift of some judges toward the old *forum non conveniens* standards was stopped once and for all by a 5–3 ruling that the code gives the District Courts a 'broader discretion' than the old rules."

The Norwood case invalidates much of plaintiff's argument in opposition to the transfer. In its memorandum (p. 7) plaintiff argues: "Any discussion of a motion under 28 U.S.C. 1404(a) must necessarily commence with the case of Gulf Oil Corp. v. Gilbert * * *." This statement is valid only when limited to the initial application of the statute and its antecedent history, particularly in view of the fact that the Gulf Oil Corp. decision was rendered prior to the enactment of Section 1404(a). While plaintiff cites decisions holding that Section 1404(a) did not alter the traditional application of *forum non conveniens* (for example, Ford Motor Co. v. Ryan, 2 Cir., 1950, 182 F.2d 329; Nicol v. Koscinski, 6 Cir., 1951, 188 F.2d 537; Sun Oil Co. v. Lederle, 6 Cir., 1952, 199 F.2d 423; General Portland Cement Co. v. Perry, 7 Cir., 1953, 204 F.2d 316; and Headrick v. Atchison T. & S. F. R. Co., 10 Cir., 1950, 182 F.2d 305, plaintiff does not mention other cases holding that Section 1404(a) should receive a more liberal interpretation, for example, Jiffy Lubricator Co., Inc., v. Stewart-Warner Corp., 4 Cir., 1949, 177 F.2d 360; All States Freight v. Modarelli, 3 Cir., 1952, 196 F.2d 1010; and Naughton v.

Pennsylvania R. Co., D.C.Pa.1949, 85 F. Supp. 761. In every case cited by plaintiff, but one, Headrick v. Atchison, T. & S. F. R. Co., infra, the courts assumed implicitly that Section 1404(a) was not intended to change the standards theretofore applicable to *forum non conveniens*, and determined the motion for transfer in the light of those standards. In the Headrick case, the Court concluded that Section 1404(a) was intended to codify *forum non conveniens* with the addition that, if there be a more convenient forum, the action must be transferred to it and not be dismissed. While the courts agreed that Section 1040(a) expressly differed from *forum non conveniens* in that transfer would result instead of dismissal, they did not agree upon an otherwise more liberal application of Section 1404(a).

The evolution of the new conception of *forum non conveniens*—from the Gulf Oil Corp. case to the Norwood case—falls into three stages. (1) Prior to the enactment of Section 1404(a), *forum non conveniens*, when invoked, automatically dictated dismissal. As illustrated by the Gulf Oil Corp. case, courts were reluctant to divest themselves of jurisdiction properly laid, especially where dismissal resulted therefrom. The crux of the dispute was articulated by the dissenting opinion in the Gulf Oil Corp. case: that the doctrine of *forum non conveniens* ought not be engrafted upon the statutes fixing jurisdiction and proper venue in the absence of Congressional authorization for such result; and that where venue was properly laid, the courts did not then have inherent discretionary power to divest themselves of jurisdiction by applying the doctrine of *forum non conveniens*.

In the recent Norwood case, the Supreme Court declared:

"As a consequence, we believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader."[31]

Thus, the Norwood case settles the question whether § 1404(a) represented a mere statutory codification of *forum non conveniens* or whether it expanded the scope of the discretion of district courts to transfer a case to a more convenient forum "in the interest of justice".

While the case at bar should be transferred in accordance with the broader discretion now accorded by § 1404(a), it is appropriate to point out that the case would have merited dismissal under the former and stricter application of *forum non conveniens*.

The bisecting of what is essentially a single controversy will be obviated by remitting the parties to the Western District. There, the validity of the patent and the issue of infringement will be litigated in one lawsuit; all of the interested parties will be before the court; its judgment will be *res judicata;* and its jurisdiction is unquestioned. Moreover, a speedier trial will be had in the Western District.[32] Finally, it is undisputed that plaintiff has its principal office in the City of Rochester, within the Western District.

Motion to dismiss is denied. Motion to transfer is granted. Settle order on notice.

(2) Shortly after the Gulf Oil Corp. decision, Congress enacted Section 1404(a). In Ford Motor Co. v. Ryan, infra, the Court of Appeals for the Second Circuit concluded that, by enacting Section 1404 (a), Congress had not intended to alter the fundamental principles of *forum non conveniens;* and that that doctrine had been codified in Section 1404(a). (3) A contrary point of view—that Section 1404 (a) was more than a mere codification of *forum non conveniens*—had been enunciated in such decisions as the Naughton, Jiffy Lubricator and All States Freight cases, infra. And that point of view was finally adopted by the Supreme Court in the Norwood case, infra.

31. At page 32 of 349 U.S., at page 546 of 75 S.Ct.

32. In the Gulf Oil Corp. case, the Supreme Court alluded to calendar congestion as a factor of "public interest" which has a "place in applying the doctrine [*forum non conveniens*]." 330 U.S. at page 508, 67 S.Ct. at page 843. In Wells v. Simonds, 1952, 345 U.S. 514, 522, 73 S.Ct. 856, 860, 97 L.Ed. 1211, the Court stated that *forum non conveniens* involves "such considerations as the state of the court's docket." See Chicago, Rock Island & Pacific Railroad Co. v. Igoe, 7 Cir., 1922, 220 F.2d 299, 303.