AMERICAN NEEDLE AND NOVELTY
CO., a copartnership composed of Bruce
Kronenberger and Anna Kronenberger,
Plaintiff,

v.

SCHUESSLER KNITTING MILLS, INC.,
a corporation, and Schuessler Knitting
Foundation, Defendants.

Civ. A. No. 64 C 1473.

United States District Court
N. D. Illinois, E. D.

June 7, 1966.

Maurice S. Cayne and David D. Kaufman, Chicago, Ill., for plaintiff.

Jerome F. Fallon and John W. Chestnut, of Dawson, Tilton, Fallon, Lungmus & Alexander, Chicago, Ill., for defendants.

## FINDINGS OF FACT

AUSTIN, District Judge.

1. This is a civil action for declaratory judgment of invalidity and noninfringement of United States Letters Patent No. 2,998,611, unfair competition, false marking and patent misuse brought by American Needle and Novelty Co. against Schuessler Knitting Mills, Inc. and Schuessler Knitting Foundation.

2. Jurisdiction is asserted under the patent statutes 28 U.S.C. § 1338 and 35 U.S.C. Sections 282 and 292, and relief was sought under the Declaratory Judgment Statute, 28 U.S.C. § 2201.

3. The plaintiff is a copartnership and the partners, Bruce Kronenberger and Anna Kronenberger, are residents of Chicago, Illinois; the copartnership having its office and principal place of business at 2846 West North Avenue, Chicago, Illinois.

4. The defendant, Schuessler Knitting Mills, Inc., is a corporation organized under the laws of the State of Illinois having its office and principal place of business at 1523 North Fremont St., Chicago, Illinois.

5. The defendant Schuessler Knitting Foundation is a charitable organization organized under the laws of the State of Illinois having its office at 1523 North Fremont St., Chicago, Illinois.

6. Patent No. 2,998,611 was issued September 5, 1961 to defendant Schuessler Knitting Mills, Inc., upon an application of Walter E. Schuessler filed March 23, 1960. On February 1, 1963, the patent was reassigned to Walter E. Schuessler. The subject matter of United States Letters Patent No. 2,998,611 is a cap for boys of ages 6–12. The cap has a top portion with a cuff or band around its lower edge as seen below. Further, the cap has knitted face mask or hood sewn inside the top portion which is adapted to be pulled down over the face of the wearer. This also is shown below; the two views being Figures 1 and 2 of Patent No. 2,998,611.

7. The cap shown in United States Letters Patent 2,998,611 is an improvement over the "Balaklava" cap shown in Sanborn Patent No. 1,235,927 issued August 7, 1917 and Schwarz Patent No. 160,844 issued March 16, 1875. The Balaklava-type cap derives its name from the fact that soldiers in the Crimean War wore such caps.

8. The Schuessler cap differs from the Balaklava cap in employing a cuff which is independent from face hood and separately movable relative thereto. Both the cuff and hood can be made to extend downwardly from the top portion of the cap to give double protection about the ears and neck, the cuff causing the face hood to cling tightly about the ears and back of the head of the boy wearing the cap. When the face hood is not in use, it is telescoped within the top portion of the cap. This is not possible in the Balaklava-type cap where the face hood was folded on itself to form the cuff. When the cuff was unfolded to provide the face hood, the cuff necessarily disappeared. Because of the separate provision in the Schuessler cap of both the cuff and the face hood, it is possible to constrict the lower end of the face hood so as to obtain a tight fit about the neck of the boy wearing the cap and, thereby preventing entry of cold air. Again, this is impossible with the Balaklava-type cap.

9. Caps made according to the drawing in Patent No. 2,998,611 were marketed by the defendant, Schuessler Knitting Mills, Inc., prior to 1963 and were an immediate commercial success.

10. A month or two prior to February 4, 1963, the date of a license and buy-and-sell agreement among Joel Manufacturing Co., Inc., of 2215 Everett St., Richmond, Virginia, Schuessler Knitting Mills, Inc., and Walter E. Schuessler, Irving Joel, president of Joel Manufacturing Co., Inc., cut out the face-mask portion of Schuessler caps to test-market a modified form of the cap—because the

Schuessler cap was the "biggest deal around." Comparison of the Joel cap (Plaintiff's Exhibit 29) with that of Schuessler reveals that the cap shown in the patent has a "knitted" crown or top portion while the Joel cap has a cloth crown or top portion. In each case the face mask is a tubular-knit portion having a generally elliptical opening spaced above the lower edge to expose the boy's eyes and nose.

11. After Irving Joel had ascertained that the cloth cap with face mask was a desirable product and after he had difficulty making his own masks, he met briefly with Walter E. Schuessler. Joel met with Schuessler because he knew that the Schuessler cap was covered by a patent and because he was interested in having a source of knitted inserts which were adapted to be sewn into his regular caps to provide pull-down face masks. With these objectives in mind, licensing and a supplier, Irving Joel and Walter E. Schuessler arrived at the above-mentioned buy-and-sell and license agreement. Joel felt that the arrangement whereby Schuessler would fill Joel's requirements of the knitted inserts at $3.00 per dozen (including a 50¢ royalty) was a good deal—one at his (Irving Joel's) suggestion and that was why he insisted upon having it in the agreement.

12. Shortly after the agreement with Joel was completed, Walter E. Schuessler licensed the following other cap manufacturers under Patent No. 2,998,611: S & L Novelty Co., a copartnership composed of Jacob W. Roller and Julius Litowsky with offices at 731 S. Wells Street, Chicago, Illinois; Clearasite Headwear, Inc., having its office at 21–29 West 4th Street, New York, New York, and Pekett Headwear Co., Inc. having its office at 44 West 18th Street, New York, New York.

13. When Joel Manufacturing Co., Inc., commenced marketing caps, using the knitted inserts supplied by Schuessler, Irving Joel independently determined to mark his caps and advertising literature with the number of Patent No. 2,998,611. There was no requirement of this in the agreement. The extent of defendant's involvement in the marking by Joel, was a phone conversation in which Irving Joel asked Walter Schuessler whether Schuessler had any objections to the marking, the answer to which was "no".

14. The cap manufactured and sold by Joel Manufacturing Co., Inc., differs essentially from that shown in the drawing of Patent No. 2,998,611 and likewise from the cap marketed by Schuessler Knitting Mills, Inc., in having a visor-equipped top portion constructed of leatherette or cloth material rather than knitted material, and further in that the band or cuff does not completely encircle the top portion but terminates near the edges of the forwardly-projecting visor. The Joel cap possesses all of the elements specified in claim 1 of Patent No. 2,998,-611 which reads:

"A cap having a face hood and a cuff, comprising a top cap portion provided with a cuff, and a face hood portion having an open lower end, a face opening thereabove, and a horizontal line of stitching securing said face hood within said top cap portion and inwardly of said cuff-forming portion, whereby said face hood may be telescoped within said top cap portion of withdrawn therebelow into face protecting position with said cuff thereabove".

15. Testimony on the correspondence of the Joel cap to the above-recited claim was given by Walter E. Schuessler who has been in the cap manufacturing business for over 40 years and is therefore skilled in this art. It is proper for the skilled art worker to apply the claims of a patent. Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 437, 22 S.Ct. 698, 711, 46 L.Ed. 968 (1902):

"The specification of the patent is not addressed to lawyers, or even to the public generally, but to the manufacturers of steel; and any description which is sufficient to apprise them in the language of the art of the definite feature of the invention, and to serve

as a warning to others of what the patent claims as a monopoly, is sufficiently definite to sustain the patent."

16. In like fashion, caps of Schuessler manufacture (Plaintiff's Exhibits 10–13) with knitted crowns but with inserts that were split and equipped with snaps below the face opening were found to respond part for part with those of claim 1 of Patent No. 2,998,611.

17. Where the products marked with the patent number literally correspond to the language of a claim of the patent in question, the marking is not false, but is proper.

18. In August, 1963, well after the Joel cap was being produced in quantity, the plaintiff, Bruce Kronenberger, requested Walter E. Schuessler to sell him inserts to prepare sample caps like the Joel cap. The first delivery of face hoods pursuant to this request was on November 11, 1963, with the invoice (Plaintiff's Exhibit 2) indicating that there would be an additional 50¢ per dozen royalty if the insert provided was used as an inside pull-out mask, i. e., according to the Patent No. 2,998,611. Bruce Kronenberger further testified that Walter E. Schuessler told him that the inserts could be purchased anywhere but that he would always have to keep in mind that there would be a 50¢ royalty per dozen no matter where he bought the inserts.

19. An offer of a license does not constitute a charge of infringement. Walter Process Equipment, Inc. v. FMC Corp., 356 F.2d 449 (7 Cir., 1966).

20. In mid-August of 1964, Walter E. Schuessler was informed that Sears Roebuck and Co. was selling Joel-type caps, i. e., cloth-crown caps with a knitted insert which could be pulled down to provide a face mask and made by American Needle and Novelty Co. Thereupon, Walter E. Schuessler telephoned Bruce Kronenberger to check the truth of this information. Bruce Kronenberger first told him that this was not the case, but subsequently in the phone conversation told him that American Needle and Novelty Co. was supplying a cap to Sears Roebuck and Co., but that it was different from the Joel cap. Thereupon, Walter E. Schuessler requested Bruce Kronenberger to send him a sample of the cap for submission to Schuessler's attorneys in order to ascertain whether it avoided Patent No. 2,998,611. This, Bruce Kronenberger agreed to do.

21. Shortly thereafter, on August 18, 1964, Walter E. Schuessler caused his attorneys to send a letter to American Needle and Novelty Co. confirming this request. At the same time, a letter (Plaintiff's Exhibit 6) including the following paragraphs was directed to Sears Roebuck and Co. for the purpose of corroborating the cap expected to be furnished by American Needle and Novelty Co.

"Our firm represents Schuessler Knitting Mills of Chicago, Illinois. Schuessler Patent No. 2,998,611 relates to caps with knitted mask inserts and is the subject of a license which has been granted to Joel Manufacturing Co. of Richmond, Virginia, one of your suppliers. We understand that American Needle and Novelty Co. is presently making and selling a boy's cap which is very similar in appearance to the Joel cap and that the new American Needle cap has been included in your line. On behalf of Schuessler and its licensee, Joel, we are interested in learning more about the American Needle and Novelty Co. cap."

This was preceded by the following paragraph:

"We are interested in obtaining a sample of the cloth visor caps which have knitted mask inserts and which are being made for you by American Needle and Novelty Co., 2846 West North Avenue, Chicago, Illinois. If you would be good enough to send us such a sample and advise us of its cost, we would be happy to send you our check by return mail."

22. Bruce Gustafson, the recipient of the letter at Sears Roebuck and Co. advised Bruce Kronenberger of the letter,

who thereupon conferred with his attorney and decided to institute this suit.

23. The initial complaint was filed on August 28, 1964, and was against Schuessler Knitting Mills, Inc. It was for a declaratory judgment of invalidity and noninfringement of Patent No. 2,-998,611, for unfair competition, and for false marking of the Joel caps with Patent No. 2,998,611 in violation of 35 U.S.C. § 292.

24. Substantially prior to this, on January 2, 1964, Patent No. 2,998,611 was assigned by Walter E. Schuessler to Schuessler Knitting Foundation, and the same recorded in Reel 1407, Frame 070 of the United States Patent Office records.

25. Although the plaintiff, Bruce Kronenberger, had previously instituted two patent suits against competitors in the cap field, wherein he was represented by the same attorney as here, it was not until the filing of the Second Amended Complaint that Schuessler Knitting Foundation, the owner of the patent at the time the suit was filed, was named as a co-defendant.

■ 26. At the trial of the case, representatives of the defendant saw a cap of American Needle and Novelty Co. for the first time, this being identified as Plaintiff's Exhibit 1. This cap (Plaintiff's Exhibit 1) is identical to the Joel cap with the exception that the knitted insert lacks a thin edge of knitting immediately above the face opening and below the visor of the cap. The caps operate in the same way and Sears Roebuck and Co. sells the two interchangeably. At the trial, Walter E. Schuessler testified that the American Needle and Novelty Co. cap (Plaintiff's Exhibit 1) compares element for element with the language of claim 1 of Patent No. 2,998,611 and the court so finds. It was therefore, not improper for Schuessler to charge American Needle and Novelty Co. a royalty on caps made with inserts obtained from Schuessler.

27. The Court finds under the controlling authority of Walker Process Equipment Inc. v. FMC Corp., 356 F.2d 449, (7 Cir. 1966) that the activities of the defendants herein did not constitute a charge of infringement. Specifically, the offering of licenses under the patent does not constitute the type of threatened activity which justifies a declaratory judgment suit. Here the court is aware that an indemnification agreement was given to Sears Roebuck and Co. by American Needle and Novelty Co. shortly after the receipt of the August 18th letter (Plaintiff's Exhibit 6) but finds that the same was voluntarily proffered by American Needle and Novelty Co. so that there is no inference that Sears Roebuck and Co. considered the August 18, 1966 letter (Plaintiff's Exhibit 6) to be a charge of infringement.

28. The Court further relies upon the rationale of Aralac, Inc. v. Hat Corporation of America, 166 F.2d 286 (3 Cir. 1948) quoted with approval in the above-cited *Walker* case. Here the Court finds that the plaintiff was, in fact, not accused of infringement by the patent owner.

■ 29. What was sought here was a sample of the American Needle and Novelty Co. cap to ascertain the correctness of the assertion by Bruce Kronenberger that the cap was different from the Joel cap. The investigation by Schuessler is justified as a prudent business activity, not amounting to a charge of infringement. Thermo-Plastics Corp. v. International Pulverizing Corp., 42 F. Supp. 408, 410 (D.N.J., 1941):

"A holder of a patent has a right to investigate and inquire with relation to other devices of a nature similar to those he or it is manufacturing, and such investigation or inquiry does not seem improper nor does it contain a threat of infringement."

30. Besides considering the jurisdictional question, the Court also received evidence from both sides on the question of patent validity to resolve the conflict between the parties if defendants' activities did amount to a charge of infringement. Bearing in mind the admonition

of the Supreme Court in Sinclair & Carrol Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644 (1944) about the desirability of investigating validity as a matter of public importance and the propriety of continued patent marking, the Court finds that the prior art advanced by plaintiff, principally the Schwarz Patent No. 160,-844, (Plaintiff's Exhibit 35) comes no closer to the patent in suit, No. 2,998,611, than does the Sanborn Patent No. 1,235,-927 which was considered by the Patent Office. Thus, the presumption of validity accorded Patent No. 2,998,611 under 35 U.S.C. § 282 remains unimpaired. The other prior art references had been before the Patent Office during the prosecution of the application which resulted in the patent in suit and thus the presumption of validity applies particularly to them. Ekstrom-Carlson & Co. v. Onsrud Machine Works, Inc., 298 F.2d 765, 768 (7 Cir., 1962).

31. Notwithstanding the fact that Bruce Kronenberger had been in the cap-manufacturing business since 1937, he knew of no cap with a face mask insertable into the cap prior to that of Schuessler. Caps of the non-insertable face-mask type, i. e., the Balaklava, have been available since at least the Crimean War (1854) and in this connection, the language of the Court of Appeals for the Seventh Circuit in AMP, Inc. v. Vaco Products Co., 280 F.2d 518, 520 (1960) is singularly pertinent:

"The Grover Patent was issued in 1855 which was ninety-six years prior to the date of the patent in suit. That it was not obvious to provide a threaded hole for laterally supporting the threads of a square bolt adjacent to the plane along which the square bolt is being sheared, is shown quite conclusively by the fact that for ninety-six years no one ever did conceive this idea despite the recognized need for some means of shortening bolts and screws without damage".

32. The Court in the *AMP* case quoted (page 521) with approval the language in a prior Seventh Circuit case, Charles Peckat Mfg. Co. v. Jacobs, 178 F.2d 794, 801 (1949):

"The apparent simplicity of a new device often leads an inexperienced person to think that it would have occurred to anyone familiar with the subject; that the decisive answer is that with dozens and perhaps hundreds of others laboring in the same field, it had never occurred to anyone before. The practiced eye of an ordinary mechanic may be sufficiently trusted to see what ought to be apparent to everyone. Potts v. Creager, 155 U.S. 597, 604, 15 S.Ct. 194, 39 L.Ed. 275 (1894)."

33. The Court finds that there is no diversity of citizenship between the parties. Therefore, the second count relating the unfair competition only can be supported if, at all, under 28 U.S.C. § 1338(b):

"The District Courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trademark laws."

34. The allegation of trademark mismarking in the second count of unfair competition is not a claim "related" to infringement as defined by the Court of Appeals for the Seventh Circuit in Powder Power Tool Corp. v. Powder Actuated Tool Co., 230 F.2d 409, 413 (1956):

"It must appear that both the federal and non-federal causes rest upon substantially identical facts."

35. The activities of defendants did not constitute a charge of infringement much less the harassment alleged in the second count of the Second Amended Complaint. Still further, the marking of caps with the number of the patent in suit was proper, so there is no competitive injury to plaintiff from this.

36. The third count which has to do with false marking in violation of 35 U.S.C. § 292 is without merit. Both the Joel cap (Plaintiff's Exhibit 29) and the

Schuessler "Split-Insert" caps (Plaintiff's Exhibits 10–13) which were marked with the number of the patent in suit, are literally defined by the language of claim 1 of Patent No. 2,998,611.

37. The fourth count relative to misuse of the patent by virtue of alleged tie-in sales falls with the first count. Misuse is an equitable defense and, if present, serves only to bar the enforceability of the patent. The patent is not sought to be enforced in this action. Hence the question of misuse is moot.

## CONCLUSIONS OF LAW

### I.

The Court has jurisdiction of the parties to this action.

### II.

The Court lacks jurisdiction of the subject matter of Count I of the Second Amended Complaint, relating to Declaratory Judgment of invalidity of United States Letters Patent No. 2,998,-611 and noninfringement thereof, there being no charge of infringement present to support the justiciable controversy required under 28 U.S.C. § 2201 and 2202.

### III.

The Court lacks jurisdiction of the subject matter of Count II relative to unfair competition. For the Court to have jurisdiction of a count sounding in unfair competition when joined with a federal question, the Court must first have jurisdiction of the federal question. Hurn v. Oursler, 289 U.S. 238, 240, 53 S.Ct. 586, 77 L.Ed. 1148 (1932). The Court additionally lacks jurisdiction under 28 U.S.C. § 1338(b) because the federal and non-federal causes do not rest upon substantially identical facts. Powder Power Tool Corp. v. Powder Actuated Tool Co., 230 F.2d 409, 413 (7 Cir. 1956). To the extent that the Court has jurisdiction under 28 U.S.C. § 1338(b) because of the concurrent allegation of false marking under 35 U.S.C. § 292, the Court concludes that there was no unfair competition on the part of the defendants.

### IV.

The Court has jurisdiction of the subject matter of Count III relating to false marking. The marking of products by defendant Schuessler Knitting Mills, Inc. and by licensees under Patent No. 2,998,611 was proper and lawful since the products so marked were defined by claim 1 of the patent.

### V.

The Court lacks jurisdiction of the subject matter of Count IV relating to misuse of Patent No. 2,998,611 since misuse is an affirmative defense to the enforceability of the patent and here the Court lacks jurisdiction to enforce the patent.

### VI.

Where the prior art asserted against the validity of a patent consists essentially of references before the Patent Office with the only reference not so considered being no more pertinent than those that were, the presumption of patent validity remains unimpaired and is in fact strengthened. Power Curbers, Inc. v. E. D. Etnyre & Co., 298 F.2d 484, 493 (4 Cir. 1962).