OWATONNA MANUFACTURING COMPANY, Inc., Plaintiff,

v.

MELROE COMPANY (formerly or also known as Melroe Manufacturing Company) and Cyril N. Keller, Defendants.

No. 4–68 Civ. 163.

United States District Court
D. Minnesota,
Fourth Division.

July 3, 1969.

---

Merchant & Gould, by John D. Gould and Paul A. Welter, Minneapolis, Minn., for plaintiff.

Dorsey, Marquart, Windhorst, West & Halladay, by Peter Dorsey and Eugene L. Johnson, Minneapolis, Minn., for Melroe Co.

Williamson, Palmatier & Bains, by Herman H. Bains, Minneapolis, Minn., for Cyril Keller.

## MEMORANDUM

NEVILLE, District Judge.

This is a declaratory judgment action involving the questions of validity and alleged infringement of three patents owned by defendants and covering a front-end loader manufactured by defendant Melroe Company under the trade-mark Bobcat.[1] The plaintiff manufactures and sells a similar loader under the trademark Mustang. On May 14, 1968 plaintiff filed this complaint seeking a declaration either of patent invalidity or of non-infringement or both. In Count I of plaintiff's complaint, plaintiff alleges violations of Sections 1 and 2 of the Sherman Act based upon patent invalidity and fraudulent procurement in the issuance of Patent No. 3,151,503 and Patent No. 3,231,117. Counts II, III and IV seek declaratory relief under 28 U.S.C. §§ 2201 and 2202 that defendants' three patents are invalid or not infringed by any loader manufactured and sold by plaintiff.

Presently before the court are three motions by defendants. The first seeks an order under Rule 12 of the Federal Rules of Civil Procedure dismissing the complaint on the ground that no justiciable controversy exists between plaintiff and defendants.[2] The second motion seeks an order dismissing the complaint for failure to join an indispensable party, namely, Louis J. Keller of Gwinner, North Dakota. In the alternative in the third motion, defendants move this court to transfer this action under 28 U.S.C. § 1404(a) to the United States District Court for the District of North Dakota, Southeastern Division.

## FIRST MOTION

The Declaratory Judgment Act requires an actual controversy as a prerequisite to the exercise of subject matter jurisdiction by the court.[3] In Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941) the Supreme Court said:

"Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests,

1. Defendants' three "Bobcat patents" relate to the overall construction, transmission and design of the loader. The three patents are:

   (1) U. S. Patent No. 3,151,503, issued Oct. 6, 1964 to Louis J. Keller and Cyril N. Keller as joint inventors.

   (2) U. S. Patent No. 3,231,117, issued Jan. 25, 1966 to Clifford E. Melroe and Louis J. Keller as joint inventors.

   (3) U. S. Design Patent 195,254, issued May 21, 1963 to Louis J. Keller, Cyril N. Keller and Clifford E. Melroe as joint inventors and assignors to Melroe Manufacturing Company (now the Melroe Company).

2. At oral argument and in their brief, defendants have limited their first motion to a request to dismiss counts II, III and IV of the complaint. Defendants apparently concede that count I, the antitrust claim, does present an actual controversy.

3. The existence of a "case or controversy" is in fact a constitutional requirement to this court's jurisdiction mandated by the United States Constitution, Article III. The Declaratory Judgment Act authorizes a federal court in its sound discretion to make a declaration of rights when presented with such a case or controversy. See Public Affairs Associates, Inc. v. Rickover, 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962) and Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

One purpose of the Declaratory Judgment Act is to allow a prospective defendant to sue in order to establish its nonliability. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). This purpose has been applied in patent actions. Thus a plaintiff has been allowed to maintain an action for declaratory judgment of noninfringement and invalidity of a patent where there is a reasonable apprehension of an infringement suit or other damages to customers of the alleged infringer should plaintiff continue to market its product. Japan Gas Lighter Ass'n v. Ronson Corp., 257 F. Supp. 219, 237 (D.N.J. 1966); Sticker Industrial Supply Corp. v. Blaw-Knox Co., 367 F.2d 744, 747 (7th Cir. 1966). In Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 200 F.2d 876, 878 (2nd Cir. 1952) the Second Circuit said:

"[o]nce the patentee has made some claim, directly or indirectly, so that notice is given that it asserts that there is or will be an infringement, a justiciable controversy exists, entitleing the alleged infringer to seek declaratory relief."

This position has been followed consistently by the Second Circuit and other circuits which have considered the problem. See Dr. Beck and Co. G.M.B.H. v. General Electric Co., 317 F.2d 538, 539 (2nd Cir. 1963); Wembley, Inc. v. Superba Cravats, Inc., 315 F.2d 87, 89 (2nd Cir. 1963); Joseph Bancroft & Sons Co. v. Spunize Co., 268 F.2d 522, 523 (2nd Cir. 1959); Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp., 257 F.2d 485, 490 (3rd Cir. 1958); Massa v. Jiffy Products Co., 240 F.2d 702, 705 (9th Cir.), cert. denied, 353 U.S. 947, 77 S.Ct. 825, 1 L.Ed.2d 856 (1957); Federal Telephone & Radio Corp. v. Associated Telephone and Telegraph Co., 169 F.2d 1012 (3rd Cir.), cert. denied, 335 U.S. 859, 69 S.Ct. 133, 93 L.Ed. 406 (1948); Grip Nut Co. v. Sharp, 124 F. 2d 814 (7th Cir. 1941); and Treemond Co. v. Schering Corp., 122 F.2d 702 (3rd Cir. 1941). See also United Lacquer Mfg. Corp. v. Maas & Waldstein Co., 111 F.Supp. 139, 141 (D.N.J. 1953).

Turning to the facts in the case at bar, the court is convinced that there existed an actual controversy between the parties at the time the complaint was filed sufficient to support an action for declaratory judgment. The complaint was filed on May 14, 1968. Prior to that time, on April 24, 1968 the president of the defendant company wrote plaintiff a letter which reads in part as follows:

"We have had our patent lawyers review our Bobcat patents in connection with your Mustang Series 1000 Loader and it is their conclusion that your Mustang infringes the Keller et al patent 3,151,503, the Melroe et al patent 3,231,117, and the Keller et al patent Des. 195,254.

I believe that both your company and ours would prefer not getting into litigation on this matter * * *. What we would like to do is for the management of our two companies to get together on an informal basis and discuss this matter to see if some solution can be worked out."[4]

Apparently a meeting was held on May 14, 1968 between representatives of both companies. A representative of plaintiff who attended the meeting states that plaintiff had hoped a reasonable settlement could be made but when it became evident that the parties could not settle their differences, plaintiff instructed its attorneys to file a declaratory judgment action in Minnesota.[5] Plaintiff also was aware that defendant

4. Exhibit B to Affidavit of Clifford E. Melroe, president of defendant Melroe Company, sworn to on June 17, 1968 and attached to defendants' motion. The first paragraph is quoted in paragraph 23 of plaintiff's complaint.

5. Affidavit of Lawrence E. Moening, sworn to on April 5, 1969 and attached as Exhibit 1 to plaintiff's brief.

Melroe Company had sued Universal Manufacturing Company and one of its dealers for patent infringement in the State of Virginia; that Universal had filed a declaratory judgment action against Melroe in Minnesota which Minnesota suit had been stayed pending the outcome of the Virginia litigation. Universal manufactured and sold self-propelled loaders in competition with plaintiff and defendant and the Universal suit apparently involved the same three patents which are the subject matter of this lawsuit. The Universal suit was settled before trial by Universal agreeing to become a licensee and to pay a royalty under the three Bobcat patents.[6] The vice-president of plaintiff states in affidavit form:

> "Prior to the meeting on May 14, 1968, between the representatives of plaintiff and defendant, I and the other officers of plaintiff learned the approximate amount of royalties being paid by Universal to Melroe under the license agreement. I and the other officers of Plaintiff believed that the royalty rate was unreasonable. We were convinced, prior to the meeting of May 14, 1968, that Melroe Company would sue Owatonna Manufacturing Company, Inc. if a license agreement similar to that granted to Universal were not entered into by Plaintiff, and were apprehensive that Melroe Company would sue one of Plaintiff's customers in a remote jurisdiction rather than suing Plaintiff here in Minnesota.

> I and the other officers of Owatonna Manufacturing Company, Inc. had decided prior to the meeting of May 14, 1968 that the royalty rate being paid by Universal was not acceptable to Owatonna Manufacturing Company, Inc., and that if the representatives of Melroe Company gave no inclination of being willing to negotiate a lower rate, that Owatonna Manufacturing

Company, Inc. would file the declaratory judgment complaint against Melroe Company and Cyril N. Keller.[7]

In this perspective, the court is convinced that plaintiff had a reasonable apprehension of an infringement suit by the Melroe Company against either plaintiff or one of its customers. Both the letter to plaintiff by the Melroe Company and the prior Universal litigation were strong indications that defendants would act affirmatively to enforce the protection claimed under the Bobcat patents.

The fact that the parties are willing to negotiate a settlement does not negate the right of one of the parties to file a declaratory judgment action. In almost all actions, whether for declaratory judgment or otherwise, there are negotiations for settlement between the parties.[8] The court is aware that two recent opinions by the Seventh Circuit and Ninth Circuit have affirmed a dismissal of a patent declaratory judgment action. An examination of these cases however reveals that in both instances there was no imminent threat of suit as existed in the case at bar. In American Needle and Novelty Co. v. Schuessler Knitting Mills, Inc., 258 F.Supp. 98 (N. D. Ill. 1966), aff'd in part, rev'd in part, 379 F.2d 376 (7th Cir. 1967) the attorneys for the patentee wrote a letter to one of plaintiff's customers asking for a sample of a boy's cap sold by plaintiff and similar to a cap patented by defendant Schuessler. Plaintiff's customer was told only that another manufacturing company had taken a license under the Schuessler patent and that plaintiff's cap was similar in appearance to the cap marketed by Schuessler's licensee. Defendant's attorney also wrote plaintiff stating that plaintiff's cap "may conflict" with the Schuessler patent. The Seventh Circuit affirmed a dismissal of the declaratory judgment action holding that "a charge of infringement was not

---

6. Exhibit 2 of plaintiff's brief.

7. Affidavit of Lawrence E. Moening, *supra* note 5.

8. According to the records of the Administrative Office of the United States Courts, the District Court in Minnesota actually tries less than 16% of all cases filed.

made, formally or informally, and that a justiciable issue as to invalidity and infringement did not exist * * *." at the time the complaint was filed. 379 F.2d at 379. The *Schuessler* case is distinguishable from the case at bar. In the present case there was a direct charge of infringement by defendant prior to the filing of the complaint. In *Schuessler* the court was careful to point out that no such charge had ever been made. Further in the case at bar there was the background of the recent Universal litigation wherein the defendant had sued a competitor of plaintiff charging infringement.

The Ninth Circuit affirmed a dismissal of a patent declaratory judgment action in Solenoid Devices, Inc. v. Ledex, Inc., 241 F.Supp. 337 (S.D. Calif. 1965), aff'd, 375 F.2d 444 (9th Cir. 1967). In *Solenoid* the infringement claim arose during negotiations for the sale of the assets of plaintiff corporation to defendant corporation. The defendant apparently was unwilling to pay the price requested by plaintiff partly because defendant claimed that the rotary solenoid produced by plaintiff infringed on a patent held by defendant. The Ninth Circuit in affirming the dismissal said that the dispute had gone no further than the "jawbone" stage. 375 F.2d at 445. Both the District Court and the Ninth Circuit emphasized that none of plaintiff's customers had been threatened or harassed as to a possible infringement suit. Thus the Ninth Circuit found no abuse of discretion in dismissing the action. The *Solenoid* dispute arose collaterally during negotiations for the sale of plaintiff's assets, and, as such, is distinguishable from the case at bar. Moreover in *Solenoid* there was no evidence that defendant planned to take any affirmative acts to enforce the protection claimed under its patent and it appears that defendant was using the infringement charge as a bargaining tool to lower the price requested by plaintiff. If the court in *Solenoid* had entertained the declaratory judgment action, it would have become involved indirectly with the sale of plaintiff's assets. In the case at bar both parties are actively marketing their loader in competition with each other.

The court believes this to be an actual controversy appropriate for declaratory relief if warranted. The court realizes that both parties are seeking to choose their own forum in which to try their case and that both think there is some strategic advantage in rushing to the courthouse so as to claim that the first to file should be given priority. Plaintiff wants the dispute litigated here and defendant is desirous of litigating the dispute in North Dakota or perhaps somewhere else. In exercising its discretion the court is aware of these factors and would in appropriate cases dismiss such a declaratory judgment action if it appeared that the sole purpose in filing the action was to pick a forum in advance in case litigation should be necessary. In the present case, however, the court is convinced that taking all considerations into account the legal dispute had crystalized to such an extent that litigation was *imminent* rather than a mere possibility.

## SECOND MOTION

Defendants' second motion seeks a dismissal of the complaint for failure to join an indispensable party, namely, Louis J. Keller of Gwinner, North Dakota. He is a joint inventor and alleged co-owner of the three Bobcat patents. In its complaint plaintiff states that Louis J. Keller was not made a party defendant because he resides in North Dakota and is beyond the jurisdiction and service of process of this District. Cyril N. Keller, a resident of Rothsay, Minnesota, is the brother of Louis Keller and one of the defendants in this action.[9] Louis J. Keller and his brother Cyril Keller are joint inventors of United States Patent No. 3,151,503 the subject matter of Count III. Louis Keller to-

---

9. See affidavit of Cyril N. Keller, sworn to on June 11, 1968 and attached to defendants' motion.

gether with Clifford Melroe is a joint inventor of Patent No. 3,231,117 the subject matter of Count IV.[10] All three men, Louis Keller, Cyril Keller and Clifford Melroe, are joint inventors of the Design Patent No. 195,254.[11] Defendants argue that while both Kellers have entered into an exclusive license agreement with Melroe covering the three patents, the Kellers have retained important rights and privileges with respect to these patents. Defendants contend that a patentee who retains ownership of part of the subject matter covered by his patent is an indispensable party to any proceeding involving the patent and may not be ignored in patent litigation which involves the validity and infringement of the patent.

The focal point of the dispute between the parties as to whether Louis Keller is an indispensable party or not involves an "agreement" entered into by Louis Keller, his brother Cyril Keller and the Melroe Company on October 1, 1963.[12] Defendants state that under this agreement the Kellers entered into an exclusive license agreement with Melroe. Plaintiff claims the agreement is an assignment in that while some rights were retained by the two patent owners, all substantial rights were in fact transferred. The agreement reads in pertinent part as follows:

"2. The KELLERS hereby grant to MELROE, subject to the exceptions set forth herein, the sole and exclusive right and license under the Licensed Patents and the right to grant sublicenses thereunder, to make and sell or cause to be made for sale by MELROE Licensed Vehicles throughout the United States, its territories and possessions and in any and all foreign countries.

5. The KELLERS shall be free to sell, license or otherwise grant rights in or to said Licensed Transmission System to any third party provided that the machine in which said Licensed Transmission System is to be used is not a self-propelled Loader Type Vehicle of the type disclosed in said Licensed Patents or made by MELROE at the time this agreement is executed and would not be competitive with machines then being manufactured by MELROE; provided further that prior to granting a third party any interest in said Licensed Transmission System, the KELLERS will first offer to MELROE, under the same terms as offered by said third party, the right to make such ma-

---

10. Defendants do not contend that Clifford Melroe is an indispensable party. Plaintiff's complaint, paragraph 44, alleges (and defendants do not deny the fact) that Clifford Melroe has assigned his entire right, title and interest in Patent No. 3,231,117 to defendant Melroe Company.

11. Defendants state that while the Design patent "is assigned on its face to Melroe Company, the Kellers have an interest in the patent identical to the interest retained by them in the other two patents involved in the litigation." Defendants' Brief, page 14. To support this claim, defendants rely on their answer to Plaintiff's Interrogatory No. 36 which reads as follows:

"The Kellers interest in U. S. Design Patent No. 195,254 is the retention of the right to sell, license or otherwise grant rights in or to said patent to any third party provided the machine manufactured by the third party is not to be used as a self-propelled loader type vehicle of the type disclosed in said patent or made by Melroe on October 1, 1963 and is not competitive with machines being then manufactured by Melroe. This interest would include the right to grant licenses to third parties for applying the patented design to the manufacture and sale of toys, models, decorative objects, and other similar articles of manufacture. The interest was acquired on October 1, 1963. The Agreement between Louis J. Keller, Cyril N. Keller and Melroe Company dated October 1, 1963 is a document involved in the transfer of the interest."

At oral argument the court was handed a document called "Assignment" which appears to be the assignment of the Design patent. Melroe's counsel stated that by oral agreement this document subsequently was modified.

12. Exhibit A, attached to affidavit of Clifford E. Melroe, sworn to on June 17, 1968.

chine with the Licensed Transmission System incorporated therein as contemplated by said third party, MELROE having ninety (90) days from the date of first offer to them by the KELLERS to exercise their option. * * * "

"14. The parties hereto each agree, except as hereinafter provided, to give written notice to the other party of any infringement of the Licensed Patents covered by this Agreement coming to its notice and shall join to promptly and diligently prosecute, through patent attorneys of recognized standing in their profession mutually acceptable to the parties hereto, all infringement of said Licensed Patents and shall equally share all expenses incurred in such prosecutions, and any sums awarded to either or both of the parties hereto or paid in settlement of such suit shall be equally divided between the parties hereto; provided, however, in the event that one of the parties hereto chooses to sue an infringer of said Licensed Patents and the other party shall refuse to join in any such suit, said other party shall permit itself to be joined in such suit in name only and shall bear 25 per cent of the expenses incurred in the prosecution of such suit, the remainder of such expenses to be borne solely by the party chosing to sue the infringer, and any sums awarded to the latter party or paid it in settlement of such suit shall be retained by it for its own use and behalf."

The leading case of Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891) held that the exclusive right to manufacture and sell, with no express authorization to use, created a license, not an assignment, giving the licensee no right to sue individually for patent infringement. Since title to the

patent remained in the owner of the patent, the Court held that the rights of the licensee generally were to be enforced through the patentee-licensor. Yet the licensee has not been left remediless. In Independent Wireless Telegraph Co. v. Radio Corp., 269 U.S. 459, 469, 46 S.Ct. 166, 70 L.Ed. 357 (1926) the Supreme Court held that the owner of a patent held title to the patent in trust for the exclusive licensee to the extent that the patentee-licensor was obligated to allow the use of his name in an infringement suit commenced by the licensee. If the patentee was outside the District and beyond the jurisdiction of the federal court, the Supreme Court held that the licensee may request that patentee join voluntarily in the lawsuit. If the patentee should refuse, he may be made an involuntary plaintiff and "[i]f he declines to take any part in the case, though he knows of its imminent pendency and of his obligation to join, he will be bound by the decree which follows." 269 U.S. at 473, 46 S.Ct at 171.

■ Under the teachings of Waterman v. Mackenzie, supra, the court holds that the Kellers—Melroe agreement of October 1, 1963 is an exclusive license rather than an assignment as to Patent 3,151,503 and Patent 3,231,117.[13] Under the agreement the Melroe Company is granted the right to manufacture and sell the patented invention. The right to use, however, was retained by the Kellers. The retention of the right to use the invention creates a license under the long standing doctrine established in Waterman.

Yet the fact that the October 1st agreement was an exclusive license rather than an assignment does not appear dispositive to the court on the question of indispensability. Pursuant to paragraph 14 of the October 1st agreement and under the doctrine of the Independent Wireless case, the Melroe Company

13. The October 1st agreement does not mention Design Patent No. 195,254. At oral argument over this motion the court was handed, without objection, an assignment of the design patent from the Kellers to Melroe. Plaintiff's Exhibit 6. While defendants claim in their interrogatories that Melroe is in effect a licensee, the present state of the record would indicate an assignment of this patent.

could have sued the Owatonna Manufacturing Company (plaintiff here). Melroe, as exclusive licensee, therefore is not dependent on the patentee to enforce the protections claimed under the various patents and would be able, if it chooses, to control and manage any litigation arising under the patents in question. Where an exclusive licensee has an independent right to sue for infringement, it has been held that to prevent a lack of mutualty a licensee may be sued individually by the alleged infringer for a declaration of patent invalidity or non-infringement. In Caldwell Manufacturing Co. v. Unique Balance Co., 18 F.R.D. 258, 263–264 (S.D. N.Y. 1955) the court said:

> "The emphasis today is upon the ability to bring suit to protect the patent against infringement; and, as a manifestation of that power, to be free to select the forum in which the question of infringement should be tried. Instead of predicating the right to sue upon the semantic categorization of litigants as 'licensees' or 'assignees,' the more recent cases have tended to place reliance upon the right to bring suit in affirmance of the patent. Then, assuming that right exists in the licensee, the licensee may be sued to test the validity of the licensed patent without the licensor-patentee's being joined as a party defendant."

Melroe Company has the independent right to sue infringers without more than giving notice to the Kellers. Melroe can force the Kellers to join in any such suit and to bear twenty-five percent of the expenses. Thus as a practical matter Melroe has all the rights of a patent owner when it comes to suing an alleged infringer.

The court does realize that some courts have treated the patent owner as an indispensable party and his absence as defeating jurisdiction. Agrashell, Inc. v. Hammons Products Co., 248 F. Supp. 258 (W.D. Mo.), aff'd, 352 F.2d 443 (8th Cir. 1965). The Agrashell case involved, however, a suit by a licensee for patent infringement and the court there was concerned about multiple suits against the alleged infringer if the patent owner were not made a party to the action. Moreover, the court found that under the terms of the agreement between the patentee and the licensee, the licensee did not have an independent right to sue in its own name. 248 F. Supp. at 260. In a declaratory judgment action brought by the alleged infringer the concern over protecting the infringer from multiple suits by both the patentee and licensee disappears. Thus in A. L. Smith Iron Co. v. Dickson, 141 F.2d 3 (2nd Cir. 1944) the court in an opinion by Judge Learned Hand held that a patentee was not an indispensable party in a declaratory judgment action by the alleged infringer against the exclusive licensee. In Dickson the court noted that the licensee had the power to sue in his own name, or at least that he represented to plaintiff that he had such a power. It also appeared that the patent owner, Cocks Company, was a British company so that to dismiss the suit would have left the alleged infringer without an effective remedy even though he was confronted with a direct attack on his business by defendant's claim of infringement. Judge Hand did recognize that a final judgment would not bind the patent owner and would leave the patent owner free to sue one of the plaintiff's customers for infringement. Yet this factor was not sufficient to negate the right of the alleged infringer to bring a declaratory judgment action against the licensee. Judge Hand said:

> "It is of course true that no such judgment would conclude the company [Cocks], and that at any time thereafter it could sue the plaintiff's customers. Nevertheless, every patent owner has an interest in keeping the reputation of his patent from the stain of a judgment of invalidity—an interest which it is proper for a court to recognize. In the case at bar the Cocks company can avoid that prejudice by intervening in this action; and indeed

it must be given the opportunity to do so. That being true, its only interest in the dismissal of the complaint is the interest of every patent owner in the choice of the forum in which, and the time at which, he will assert his rights. That too is an interest proper to be weighed against the plaintiff's interest in settling its present controversy with Dickson. Yet, even though the Cocks Company had done nothing more than license Dickson, the scales, so balanced, would tip to the plaintiff's side; for it would be obviously unfair to leave its business exposed to continuous indirect attack, merely to preserve the company's choice of forum —at least when, as here, the forum open to it is a court having jurisdiction over patents. But the case is stronger for the plaintiff than that, for the Cocks Company went further than merely to license Dickson; * * * [i]t has plainly used him to enforce its patent, and if it has not surrendered its choice of forum, at least its interest in that choice has dwindled too much to stand against the plaintiff's." 141 F.2d at 6.

Since the decision in *Agrashell*, the 1966 Amendment to Rule 19 of the Federal Rules of Civil Procedure has been adopted. The court starts with the premise underlying Rule 19 that "[w]henever feasible, the persons materially interested in the subject of an action * * * should be joined as parties so that they may be heard and a complete disposition made." See Advisory Committee Note of 1966 to Revised Rule 19 as reported in 3A Moore, Federal Practice, § 19.01 [5.–4] at 2109. If joinder is not feasible, as in the present case, then the court is instructed by Rule 19 (b) to "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." This is a decision to be made in light of pragmatic considerations and traditional notions of fairness. Rule 19(b) itself lists the following factors to be considered by the court:

"[F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

Applying the "equity and good conscience" test of Rule 19(b) and considering the cases mentioned above, the court is of the opinion that Louis J. Keller is not an indispensable party to this action. As stated by the Supreme Court in Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 119, 88 S.Ct. 733, 743, 19 L.Ed.2d 936 (1968);

"To say that a court 'must' dismiss in the absence of an indispensable party and that it 'cannot proceed' without him puts the matter the wrong way around: a court does not know whether a particular person is 'indispensable' until it has examined the situation to determine whether it can proceed without him."

From the present record before the court, it appears that the Melroe Company has taken the active role in enforcing the claimed protections afforded by the Bobcat patents. The record supports the conclusion that the Kellers have relied on Melroe to enforce the Bobcat patents. Thus in the prior Universal litigation a "non-exclusive license agreement" was entered into by Universal and Melroe and in this agreement Melroe granted Universal the right not only to make and to sell, but also the right to use the licensed vehicles.[14] This agreement was consented to by both the Kellers and while such evidence might not be sufficient to support a finding of an assignment, it is evidence of the dom-

---

14. Exhibit 2 to Plaintiff's Brief.

inant role that the Melroe Company is taking in such patent litigation. Both Melroe and Cyril Keller are now properly before the court. The record demonstrates that there has been a complete assignment of the design patent; at least the court cannot rule otherwise without hearing further evidence. Thus there can be no claim of indispensability as to either Count I (antitrust) or Count II (design patent). It also appears in this case that Louis Keller has an opportunity to, and may well, become a party voluntarily to this action. At the present time, defendants have not answered plaintiff's complaint. The court cannot blind itself to the practical fact that in all probability when defendants do answer they will counterclaim for infringement against plaintiff and in such a case Louis Keller likely will become a party, even as he was a party in the Universal case.[15] At this early stage of the proceedings, the court does not see any prejudice in continuing the case without the presence of Louis Keller. Neither party has argued that this court could not render an adequate judgment even in the event that Louis Keller does not become a party. Plaintiff is selling a loader in competition with defendant Melroe. From the viewpoint of these parties, a decision relating to patent validity or non-infringement of the loader can be made without reference to the few rights retained by Louis Keller as co-owner of two of the patents. Since Melroe has an independent right to sue Owatonna, considerations of fairness and mutuality dictate that Owatonna have an opportunity to seek declaratory relief when charged with infringement. Indeed if the court were to dismiss this action on the grounds that the

Kellers, or either one of them, were indispensable parties, plaintiff may possibly be left without an adequate remedy for if it tried to institute a declaratory judgment action in North Dakota the court can anticipate an argument that Cyril Keller, a Minnesota resident, was an indispensable party. If plaintiff cannot sue in Minnesota because Louis Keller is an indispensable party, it perhaps cannot sue in North Dakota because Cyril Keller lives in Minnesota.[16] There is no single jurisdiction in which all three can be found. On the other hand, defendant Melroe could sue plaintiff in Minnesota or could sue one of plaintiff's customers in some other jurisdiction. These practical considerations convince the court that Louis Keller is not an indispensable party to this case.

## THIRD MOTION

■■ Finally defendants argue that the case should be transferred to the District of North Dakota, Southeastern Division sitting in Fargo, North Dakota. Plaintiff has its principal place of business at Owatonna, Minnesota and manufactures the Mustang loader at that location for sale both within and outside the State of Minnesota. Defendant Melroe has its principal place of business at Gwinner, North Dakota with manufacturing facilities at Gwinner and at Cooperstown, North Dakota. Melroe sells its Bobcat loader both within and outside the State of Minnesota.

28 U.S.C. § 1404(a) reads:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

---

15. Any inconvenience to Louis Keller becoming a party would be at a minimum, Keller is a resident of North Dakota yet the Universal litigation was commenced in the Eastern District of Virginia.

16. The court is informed that Rothsay, Minnesota, the residence of Cyril Keller,

is about 40 miles from Fargo so that a suit might be commenced in North Dakota as service of process could be effectuated within 100 miles under Rule 4 of the Federal Rules of Civil Procedure. Such an action, however, would raise serious venue problems under 28 U.S.C. § 1391(b).

The principles which govern a motion for change of venue have been many times stated. The purpose of this section is to "prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964). A motion for change of venue is addressed to the sound discretion of the court. McGraw-Edison Co. v. Van Pelt, 350 F.2d 361 (8th Cir. 1965); Johnson v. Chicago, Rock Island and Pacific R. Co., 228 F.Supp. 160 (D. Minn. 1964); see also I-T-E Circuit Breaker C. v. Becker, 343 F.2d 361 (8th Cir. 1965). It is also true that unless the balance of convenience of the parties and witnesses is strongly in favor of defendant, the plaintiff's choice of forum should prevail. For cases in this district see Johnson v. Chicago, Rock Island and Pacific R. Co., 228 F.Supp. 160 (D. Minn. 1964); and Savage v. Kaiser Motors Corp., 116 F.Supp. 433 (D. Minn. 1953). This is also the general rule in other districts. See Blue Diamond Coal Co. v. United Mine Workers of America, 282 F.Supp. 562 (E.D. Tenn. 1968); Toti v. Plymouth Bus Co., 281 F.Supp. 897 (S.D. N.Y. 1968); L. C. O'Neil Trucks Pty. Limited v. Pacific Car & Foundry Co., 278 F.Supp. 839 (D. Hawaii 1967); Continental Oil Co. v. Atwood & Morrill Co., 265 F.Supp. 692 (D. Mont. 1967).

The court is convinced that on balance the case should continue to be venued in the United States District Court for the District of Minnesota. It is not disputed that a substantial number of witnesses reside in Minnesota. There is nothing peculiar in this case which would require a viewing of the Melroe plants at either Gwinner or Cooperstown. The Bobcat loader is portable and movable and thus the patented inventions, along with the Mustang loader, readily can be produced for trial.

Balancing all the considerations and for all of the reasons above stated, defendants' motions are denied.